Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| ALEXANDRA RUDDELL HILLIARD<br><br>*Apelante*<br><br>v.<br><br>MILDRED HERNÁNDEZ Y OTROS<br><br>*Apelado* | TA2025AP00497 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2024RF01267<br><br>Sobre: Filiación-Reconocimiento e Impugnación Filiatoria (Acción Mixta) |

Panel integrado por su presidente, el Juez Rodríguez Casillas, la Juez Barresi Ramos y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 9 de marzo de 2026.

Comparece ante nos la señora Alexandra Ruddell Hilliard (señora Ruddell Hilliard o apelante) mediante recurso de *Apelación* y solicita que revoquemos la *Sentencia*[1] emitida el 29 de septiembre de 2025 y notificada el 1 de octubre de 2025 por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o tribunal de instancia). En el referido dictamen, el TPI declaró *No Ha Lugar* la petición de filiación presentada por la señora Ruddell Hilliard.

Por los fundamentos que expondremos a continuación, ***confirmamos*** la *Sentencia* apelada.

**I.**

El caso de autos se originó el 20 de septiembre de 2024, ocasión en que la apelante instó una *Demanda*[2] sobre acción de filiación *post mortem,* en contra de la Sucesión de John Samuel Fucile Marucci (señor Fucile Marucci), compuesta por Mildred Hernández (apelada), John Doe y Richard Doe. Allí alegó que el señor

---

[1] Entrada #115 SUMAC TPI.
[2] Entrada #1 SUMAC TPI.

Fucile Marucci era su padre biológico, no obstante, este no le incluyó ni reconoció como hija en su testamento. En consecuencia, solicitó al tribunal de instancia que: (1) declarara judicialmente la filiación entre esta y el señor Fucile Marucci; (2) ordenara su inclusión en la sucesión del señor Fucile Marucci; (3) expidiera orden de realización de pruebas genéticas (ADN) de ser necesarias para confirmar la relación biológica; (4) se inscribiera la filiación en el Registro Demográfico de Puerto Rico. Adjuntó como evidencia fotografías y cartas dirigidas a la madre de la apelante, así como capturas de pantallas, entre otros documentos.

El 10 de noviembre de 2024, la apelada presentó su *Contestación a Demanda*[3]. Particularmente, negó las alegaciones de la demanda y reiteró que el señor Fucile Marucci no tuvo descendencia. Por ello, solicitó que se declarara *No Ha Lugar* la demanda incoada. El 27 de noviembre de 2024 se celebró la *Vista*, y en la Minuta[4], el tribunal de instancia le solicitó a la apelante explicar el plan de acción para continuar con el caso. La representación legal de la apelante indicó que la prueba a utilizarse *sería el testimonio de la apelante, cartas y fotos. Además, informó que deseaba realizar pruebas de ADN a los sobrinos del señor Fucile Marucci*, ya que exhumar el cuerpo de este era muy costoso.

Así pues, ese mismo día, el tribunal concedió a la apelante diez (10) días para que presentara proyecto de orden para que cada uno de los primos acudieran de manera voluntaria a realizarse la prueba de ADN. También ordenó proveer los certificados de nacimiento de los primos y sus progenitores; concedió cuarenta y cinco (45) días para la toma de deposición y descubrimiento de prueba, y señaló vista de seguimiento para el 29 de enero de 2025.

---

[3] Entrada #12 SUMAC TPI.
[4] Entrada #20 SUMAC TPI.

El 9 de diciembre de 2024, la apelante sometió una *Moción en Cumplimiento de Orden*[5], no obstante, el 10 de diciembre de 2024, el tribunal de instancia emitió una *Orden*[6] en la que expresó que no se había cumplido con la orden previa. En consecuencia, concedió cinco (5) días para informar e incluir los proyectos.

De este modo, el 16 de diciembre de 2024, la apelante presentó una *Moción en Cumplimiento de Orden*[7] en la cual alegó que ninguna de las instituciones locales contactadas realizaba pruebas específicas de ADN para determinar relaciones entre primos hermanos. Expresó que había identificado unas compañías para la realización de las pruebas y que estos le informaron que las pruebas de ADN entre primos hermanos no establecía la paternidad directa. Por último, solicitó al TPI su confirmación en cuanto a que la prueba propuesta sería aceptada como evidencia válida.

Por su parte, el 23 de enero de 2025, la apelada presentó una *Moción Informativa y en Solicitud de Orden*[8]. Allí, manifestó no tener reparos con lo propuesto por la apelante, pero requirió que también le fueran entregadas muestras para poder realizar las pruebas en laboratorios independientes.

El 24 de enero de 2025, el tribunal de instancia emitió una *Orden*[9] en la cual trazó el plan de trabajo. Allí determinó, entre otros, que la solicitud de la apelada relacionada a entregar las muestras de ADN debía discutirse con la representación legal de la apelante, puesto que entendía que, lo razonable, era que la transferencia de ADN fuese entre laboratorios. Concedió, además, quince (15) días para que las partes culminaran el descubrimiento de prueba y realizaran las pruebas de ADN.

---

[5] Entrada #21 SUMAC TPI.
[6] Entrada #22 SUMAC TPI.
[7] Entrada #23 SUMAC TPI.
[8] Entrada #31 SUMAC TPI.
[9] Entrada #33 SUMAC TPI.

Empero, el 12 de febrero de 2025, la apelante sometió una *Moción en Solicitud de Orden*[10] y, articuló, que la mejor y más fidedigna evidencia disponible para establecer filiación biológica entre la apelante y el señor Fucile Marucci lo era la prueba genética a través de la exhumación de sus restos. Por lo cual, solicitó al tribunal de instancia que ordenara la referida exhumación, a los fines de realizar la prueba de ADN.

Ese mismo día, el tribunal de instancia emitió una *Orden*[11] en la cual dispuso lo siguiente:

> EXPLIQUE QUE OCUR[R]I[Ó] CON LAS PRUEBAS DE ADN QUE ESTABAN EN PROCESO DE HACER A UNOS PRIMOS.
>
> INFORME SI LA PRUE[B]A QUE SE HAGA A PRIMOS O A LOS FAMILIARES DISPONIBLES NO SON SUFICIENTES PARA HACER LA DETERMINACI[Ó]N DE RELACI[Ó]N FAMILIAR.
>
> AUSCULTE E INFORME QUI[É]NES SON LAS PERSONAS AUTORIZADAS PARA DAR SU CONSENTIMIENTO PARA EXHUMAR UN CUERPO.
>
> INFORME ADEM[Á]S SI SE AUSCULT[Ó] O PIDI[Ó] AUTORIZACI[Ó]N PARA EX[H]UMAR EL CUERPO A LOS FAMILIARES CERCANOS.
>
> TIENE 3 D[Í]AS LABORABLES.
>
> PROVEA TRES FECHAS H[Á]BILES PARA VISTA DE STATUS.

El 13 de febrero de 2025, la apelante presentó *Moción en Cumplimiento de Orden*[12]. En esta misma fecha, la apelada presentó *Oposición a Moción en Cumplimiento de Orden*[13] en la que solicitó que se declarara No Ha Lugar la petición de exhumación.

Más tarde, ese mismo día, la apelante sometió su *Réplica a "Oposición a Moción en Cumplimiento de Orden"*[14]. Al día siguiente, la apelada radicó una *Dúplica a "Réplica Oposición a Moción en Cumplimiento de Orden"*[15].

---

[10] Entrada #36 SUMAC TPI.
[11] Entrada #37 SUMAC TPI. Notificada el 13 de febrero de 2025.
[12] Entradas #38-40 SUMAC TPI.
[13] Entrada #41 SUMAC TPI.
[14] Entrada #42 SUMAC TPI.
[15] Entrada #43 SUMAC TPI.

Atendidos los argumentos de las partes, el 14 de febrero de 2025, el tribunal de instancia emitió varias órdenes. En síntesis, dispuso lo siguiente: *Someta Reglamentación del Departamento de Salud Aplicable a las Exhumaciones; en ausencia de consentimiento de los familiares directos, la vía legal apropiada es obtener una orden judicial, conforme a 36 C.F.R. § 12.6(f), que establece que la exhumación de un cuerpo en un cementerio nacional puede ser ordenada por un tribunal competente estatal o federal.*

Así pues, el 18 de febrero de 2025, la apelante presentó una *Moción Informativa y en Cumplimiento de Orden*[16].

El 21 de febrero de 2025 se celebró una *Vista* mediante videoconferencia[17]. A preguntas del tribunal, la apelante explicó que no se inició el caso cuando el señor Fucile Marucci estaba vivo porque esta entendía que iba a ser reconocida en el testamento, dado que tenía relación con el fallecido, lo visitaba y hablaban. Luego de escuchadas ambas partes, el tribunal determinó conceder un breve término para que la apelante cumpliera con proveer la literatura requerida para la exhumación y presentar proyecto de orden.

El 24 de febrero de 2025, la apelante presentó una *Moción en Cumplimiento de Orden*[18] en la que incluyó la literatura solicitada y reiteró su solicitud de exhumación.

De este modo, al día siguiente, el tribunal emitió la correspondiente *Order for Exhumation*, la cual fue enmendada el 28 de febrero de 2025[19].

Así las cosas, el 25 de marzo de 2025, la apelante presentó una *Moción para Informar Estado del Proceso de Exhumación y en*

---

[16] Entrada #50 SUMAC TPI.
[17] Apéndice 52-53 del recurso de *Apelación.*
[18] Entrada #54 SUMAC TPI.
[19] Entradas #55–57 SUMAC TPI. Notificadas el 27 de febrero de 2025, y el 28 de febrero de 2025, respectivamente.

***Solicitud Recalendarización de Vista***[20]. Expresó que, para dar cumplimiento a la orden de exhumación, gestionó con el Departamento de Salud de Puerto Rico el trámite necesario para la autorización de la exhumación y que este se encontraba pendiente de evaluación por parte de la Oficina Central de la División de Salud Ambiental. Por ello, solicitó que se recalendarizara la vista del 28 de marzo de 2025 para una fecha posterior.

Por consiguiente, el tribunal de instancia emitió una *Orden*[21] en la cual recalendarizó la vista para el 6 de mayo de 2025.

El 4 de mayo de 2025, nuevamente, la apelante sometió *Moción para Informar Estado del Proceso de Exhumación y en Solicitud Recalendarización de Vista*[22].

A tales fines, el 5 de mayo de 2025, el tribunal de instancia emitió una *Orden*[23] en la que reseñaló la vista para el 11 de junio de 2025.

No obstante, el día de la referida vista, el tribunal dictó la siguiente *Orden*[24]

> A LA VISTA DE HOY NO COMPARECI[Ó] LA PARTE DEMANDANTE NI EXCUS[Ó] SU COMPARECENCIA.
>
> SE ORDENA LO SIGUIENTE,
>
> TIENE 5 D[Í]AS PARA
>
> -PARA PAGAR LA FIANZA ORDENADA EL 14 DE FEBRERO DE 2025 (ENTRADA 44 DE SUMAC)
>
> -PAGAR LOS SELLOS DE SUSPENSI[Ó]N DE VISTA DE HOY 11 DE JUNIO DE 2025
>
> -INFORMAR LAS RAZONES POR LAS CUALES NO DEBE SER DESESTIMADA LA PETICI[Ó]N
>
> -EXPLICAR EN DETALLE CADA UNA DE LAS GESTIONES REALIZADAS PARA LA EXHUMACI[Ó]N
>
> NOTIF[Í]QUESE A LA PARTE DEMANDANTE DIRECTAMENTE.

---

[20] Entrada #58 SUMAC TPI.
[21] Entrada #59 SUMAC TPI.
[22] Entrada #60 SUMAC TPI.
[23] Entrada #61 SUMAC TPI. Notificada al día siguiente.
[24] Entrada #62 SUMAC TPI.

El 17 de junio de 2025, la apelante presentó una *Moción en Cumplimiento de Orden*[25]. En esta, informó las gestiones realizadas para la exhumación y señaló que se ha hecho muy oneroso conseguir un laboratorio que pueda acudir a realizar la toma de muestra necesaria para la prueba de paternidad. Agregó que, en busca de orientación, se le refirió al laboratorio (Alpha Medical Tests), con el cual ha estado en contacto mediante un representante de este.

Posteriormente, el 30 de junio de 2025, la apelante instó una *Moción en Cumplimiento de Orden y Solicitud de Intervención del Instituto de Ciencias Forenses de Puerto Rico*[26]. Esgrimió que al contactar a Alpha Medical Tests, estos le indicaron que no podían trabajar el caso. Aseveró que *"[n]ingún laboratorio privado ha mostrado la disponibilidad, recursos o colaboración necesaria para llevar a cabo la toma de muestra, lo que ha impedido cumplir con el mandato judicial en el término dispuesto"*. En vista de lo anterior, solicitó que se le ordenara al Instituto de Ciencias Forenses de Puerto Rico a que, luego del pago de los aranceles correspondientes, procediera a realizar la prueba de filiación de ADN.

El **30 de junio de 2025**, el tribunal de instancia emitió una *Orden*[27]. En particular, destacó lo siguiente:

> [El Artículo 4] establece las funciones del Instituto de Ciencias Forenses. Se[ñ]ala [..] que:
>
> El Instituto de Ciencias Forenses de Puerto Rico tendrá las siguientes funciones:
>
> (a) Investigar, con el objeto de determinar la causa, la manera y las circunstancias de la muerte de cualquier persona cuyo deceso se produzca bajo alguna de las situaciones especificadas en este capítulo.
>
> (b) En estrecha colaboración con el Departamento de Justicia, el Negociado de la Policía de Puerto Rico, o con cualquier otra agencia o negociado pertinente, así como cuando le sea requerido por los tribunales de Puerto Rico, llevará a cabo los análisis y exámenes necesarios en el área de las ciencias forenses y la criminalística en la investigación

---

[25] Entrada #64 SUMAC TPI.
[26] Entada #66 SUMAC TPI.
[27] Entrada #67 SUMAC TPI. Notificada el 1 de julio de 2025.

y tramitación de cualquier caso criminal en que sus servicios fueren necesarios. Podrá, además, brindar servicios a otras agencias o instrumentalidades del Gobierno de Puerto Rico, guardias municipales, agencias federales y otras jurisdicciones que así se lo soliciten.

[...]

Así las cosas, determinó que:

No surge de sus funciones que este facultado para realizar prácticas de ADN para asuntos privados.

Informe en 3 días si se ha comunicado con Ciencias Forenses para indagar si en efecto el Instituto realiza este tipo de gestión sobre intereses privados. De ser así informe el nombre de la persona con quien se comunic[ó].

Informe si ha realizado gestiones con laboratorios privados que puedan trasladarse a PR. Tiene 5 d[í]as para informar lo anterior y el curso a seguir en el caso.

El 9 de julio de 2025, la apelante sometió una *Moción en Cumplimiento de Orden*[28]. Indicó haberse comunicado con el Instituto de Ciencias Forenses de Puerto Rico para confirmar si realizaban pruebas de ADN para asuntos de carácter privado. Arguyó que, personal del Instituto le confirmó que no realizaban este tipo de pruebas para casos que no fuesen de naturaleza criminal o judicial y que no se encuentren referidos formalmente por agencias del Estado o por los tribunales de Puerto Rico. Detalló haber realizado gestiones con laboratorios tales como Alpha Medical Tests, Genetix y Laboratorio Toledo, pero los intentos fueron infructuosos. Por ende, solicitó que, ante la imposibilidad de completar la prueba de ADN, se le ordenara al Instituto de Ciencias Forenses de Puerto Rico realizar la prueba de ADN, aun tratándose de un asunto de naturaleza civil.

Atendida la moción, **el 9 de julio de 2025**,[29] el tribunal de instancia mediante *Resolución y Orden Señalamiento* dispuso lo siguiente:

---

[28] Entrada #68 SUMAC TPI.
[29] Entrada #69 SUMAC TPI, notificada al día siguiente. **Sobre esta determinación la apelante no solicitó reconsideración y se allanó a la celebración de vista en su fondo.**

> No ha lugar. Las funciones del Instituto de Ciencias Forenses no comprenden la solicitada por la parte. V[é]ase orden de 1 de julio de 2025.
>
> Este pleito es un asunto entre partes privadas.
>
> Siendo así y no informándose alguna otra gestión que realizara la parte demandante, se se[ñ]ala vista en sus méritos para el 23 de julio de 2025 a las 9:00am mediante videoconferencia.

El 14 de julio de 2025, la apelante presentó una *Moción en Solicitud de Suspensión de Vista y Término para Mociones Dispositivas*[30].

Por su parte, la apelada, presentó el 15 de julio de 2025 una *Solicitud de Desestimación*[31] de la demanda con perjuicio, en la cual argumentó que la apelante no puede sustentar las alegaciones de la demanda por carecer de la mejor evidencia, entiéndase, la prueba de ADN.

En atención a la solicitud de desestimación, ese mismo día, el tribunal de instancia la declaró *No Ha Lugar*[32]. Esbozó que *"[l]a prueba de la mejor evidencia no impide la presentación de prueba testifical para probar un hecho. Toda la prueba se evaluar[á] y se dar[á] el peso que amerite"*.

Además, el tribunal de instancia emitió otra *Orden*[33] en la cual declaró *No Ha Lugar* los términos solicitados para mociones dispositivas o descubrimiento de prueba. En específico, determinó:

> NO HA LUGAR A LOS T[É]RMINOS SOLICITADOS PARA MOCIONES DISPOSITIVAS O D[E]SCUBRIMIENTO DE PRUEBA.
>
> ESTE PLEITO FUE INCOADO EL 20 DE SEPTIEMBRE DE 2025, HACE 10 MESES.
>
> EL PROCESO DE DESCUBRIMIENTO DE PRUEBA EN ESTE CASO CULMIN[Ó]. DESDE LA VISTA DE 27 [DE] NOVIEMBRE DE 2025 SE COORDIN[Ó] EL MISMO Y SE DI[Ó] ESPACIO A LAS PARTES PARA ATENDER EL MISMO.
>
> LA [Ú]NICA RAZ[Ó]N POR LA CUAL NO SE HAB[Í]A CELEBRADO LA VISTA EN SUS M[É]RITOS ERA POR EL TR[Á]MITE DE LA EXHUMACI[Ó]N CUYO PROCESO EL

---

[30] Entrada #71 SUMAC TPI.
[31] Entrada #72 SUMAC TPI.
[32] Entrada #73 SUMAC TPI.
[33] Entrada #74 SUMAC TPI.

TRIBUNAL DA POR CULMINADO A LA LUZ DE LA INFORMACI[Ó]N Y MOCIONES PROVISTAS.

NO SE ABRIR[Á] EL DESCUBRIMIENTO DE PRUEBA NUEVAMENTE. SOBRE LAS MOCIONES DISPOSITIVAS, EL TRIBUNAL PROCEDER[Á] A ENTRAR A VER EL ASUNTO EN SUS M[É]RITOS.

SE RESE[Ñ]ALA LA VISTA DE 23 DE JULIO DE 2025 PARA EL 28 DE AGOSTO DE 2025 A LAS 9:30 AM MEDIANTE VIDEOCONFERENCIA.

[...]

FINALMENTE, PRESENTAR[Á]N LAS PARTES EN O ANTES DE 15 DE AGOSTO DE 2025 UNA LISTA EN CONJUNTO DE EXHIBITS E IDENTIFICACIONES DE DOCUMENTOS QUE VA[Y]AN A UTILIZAR Y LA LISTA DE TESTIGOS. SE COMUNICAR[Á]N LOS REPRESENTANTES PARA ESTIPULAR DOCUMENTOS.

El mismo día, la apelante también sometió una *Moción en Reconsideración Sobre Solicitud de Término para Presentar Moción Dispositiva*[34]. Solicitó que se le concediera hasta el 25 de julio de 2025 para la presentación de una sentencia sumaria. Además, expresó que: _Reconocemos que el Tribunal ha sido diligente y firme en el manejo de este pleito, y confiamos en que esta solicitud, presentada de buena fe, de manera responsable y fundamentada en el expediente procesal ya existente, será atendida con la consideración que amerita una petición dirigida a promover la resolución justa, rápida y económica del pleito._

Acto seguido, el tribunal de instancia emitió una *Orden*[35] en la cual concedió el plazo solicitado.

El 17 de julio de 2025, la apelada presentó una *Moción Informativa y Solicitud de Reseñalamiento de Vista*[36]. Al día siguiente, el tribunal de instancia recalendarizó la vista del 28 de agosto de 2025 para el 16 de septiembre de 2025[37].

El 18 de julio de 2025, la apelante presentó una *Solicitud de Sentencia Sumaria*[38]. Solicitó que se declarara Con Lugar la moción

---

[34] Entrada #75 SUMAC TPI.
[35] Entrada #76 SUMAC TPI.
[36] Entrada #78 SUMAC TPI.
[37] Entrada #82 SUMAC TPI.
[38] Entrada #79 SUMAC TPI.

y se reconociera a la señora Ruddell Hilliard como hija del señor Fucile Marucci.

Así pues, el 4 de agosto de 2025, la apelada sometió su *Oposición a Solicitud de Sentencia Sumaria*[39]. El 5 de agosto de 2025, la apelante presentó una *Moción en Torno a Incumplimiento con la Regla 36.3 de Procedimiento Civil*[40].

En vista de ello, el 6 de agosto de 2025, el tribunal de instancia emitió una *Resolución*[41] y realizó las siguientes determinaciones de hechos incontrovertidos:

> 1. La Sra. Alexandra Ruddell Hilliard es mayor de edad, casada con Jonathan Hilliard, empleada, hija de la Sra. Lynda Ruddell que en paz descanse, y residente de Longwood, Florida, con dirección física y postal: 139 Rose Briar Dr., Longwood, FL 32750.
>
> 2. La Peticionaria nació el 26 de febrero de 1976 en Connecticut, Estados Unidos. Se acompaña el Certificado de Nacimiento de la Peticionaria, debidamente expedido por el Departamento de Salud del Estado de Conneticut, el 29 de enero de 2019.
>
> 3. El Sr. John Samuel Fucile Marucci nació el 22 de abril de 1927 y falleció el 1 de junio de 2024.
>
> 4. La Resolución Conjunta 112-2019 con fecha del 29 de octubre de 2019 [...].
>
> 5. John Samuel Fucile Marucci fue incorporador de Fucile Associates, Inc. que fue suscrita bajo juramento el 29 de abril de 1959 ante el notario José Raúl Rosario.
>
> 6. De acuerdo con los "Informes de Corporaciones" de Fucile Associates, Inc, la dirección postal de Fucile Associates, Inc era PO Box 3466, San Juan PR 00904.
>
> 7. En el Informe de Corporaciones de 1965, 1966, 1967, 1968, 1969, 1970, 1971, 1972 y 1974 se le representó al Departamento de Estado que la dirección postal de John Samuel Fucile Marucci era PO Box 3466, San Juan PR 00904.
>
> 8. En el Informe de Corporaciones de 1975 y 1979 se le representó al Departamento de Estado que Fucile Associates, Inc tenía dirección en 1110 Ashford Ave. Condado PR.
>
> 9. En el Informe de Corporaciones de 1975, 1977, 1978, 1979 y 1980 se le representó al Departamento de Estado que

---

[39] Entradas #85-86 TPI SUMAC.
[40] Entrada #87 TPI SUMAC.
[41] Entrada #93 TPI SUMAC. *La parte apelante no solicitó reconsideración de la determinación.*

> John Samuel Fucile Marucci tenía dirección en 1110 Ashford Ave. Condado PR.
>
> 10. El 8 de enero de 1997 John Fucile incorporó J. F. CASINO AND HOTEL PRODUCTS INC, bajo las leyes locales como una corporación con fines de lucro, registro 97,075. Le representó al Departamento de Estado que su dirección postal era P.O. Box 3466, San Juan, P.R. 00902.

El tribunal de instancia señaló que la declaración jurada de la señora Rudell Hilliard, que incluye afirmaciones personales, evidencia y reclamos sobre parentesco, no era suficiente para una determinación sumaria. Por lo cual, determinó que la disputa sobre filiación debía evaluarse en un juicio en su fondo y no sumariamente.

Así las cosas, el 12 de septiembre de 2025, las partes presentaron un *Informe Conjunto Sobre la Prueba Testifical, Documental y Estipulaciones de Hechos*[42].

El 15 de septiembre de 2025, la apelante presentó un *Escrito al Expediente Judicial* en el cual hizo constar la prueba documental que usaría[43].

El 16 de septiembre de 2025, se celebró una *Vista* mediante videoconferencia[44]. Se marcaron como Exhibit los siguientes:

> Exhibit 1 Álbum familiar (antes Id 7 demandante)
> Exhibit 2 Fotografía (antes Id 8 demandante)
> Exhibit 3 Fotos de la demandante y sus padres (antes Id 9 demandante)
> Exhibit 4 Fotografía (antes Id 10 demandante)
> Exhibit A Testamento del 12 de junio de 2022 (anejo 2 entrada 86)
> Exhibit B Testamento del 2 de diciembre de 2022 (anejo 3 entrada 86)
> Exhibit C Certificación de ODIN (anejo 4 entrada 86)

El 26 de septiembre de 2025, la apelante presentó un *Memorando de Hechos y Derecho y Solicitud de Reconsideración* de la determinación emitida el 16 de septiembre de 2025 por el tribunal de instancia[45]. En síntesis, solicitó que se admitieran las cartas en

---

[42] Entrada #96 SUMAC TPI.
[43] Entrada #104 SUMAC TPI.
[44] Entrada #119 SUMAC TPI.
[45] Entrada #106 SUMAC TPI.

cuestión (Identificaciones 1 al 7) y que se le declarara a la señora Rudell Hilliard hija del señor Fucile Marucci.

Evaluado el expediente, el 29 de septiembre de 2025, el tribunal de instancia emitió la *Sentencia* de la cual se recurre[46] y realizó las siguientes determinaciones de hechos:

1. La Sra. Ruddell reside en Florida junto a su esposo y sus dos hijos desde hace 13 años. Ha residido en Myrtle Beach, South Carolina y en Connecticut.
2. La Sra. Rudell nació en 26 febrero 1976 en Rockville, Connecticut. Vivió en Connecticut con su mamá. Fue inscrita como Alexandra J. Ruddell.
3. La madre de la demandante fue Linda Ruddell, quien falleció el 29 marzo 2018.
4. El Sr. John Fucile y la Sra. Linda Ruddell se conocieron en PR cuando la Sra. Ruddell era azafata, residiendo en PR.
5. En la década de los 70, el Sr. John Fucile fue dueño de negocio, específicamente de un restaurante en Puerto Rico [el Consulado (sic)].
6. El Sr. Fucile incursionó en la política en Puerto Rico.
7. Cuando la Sra. Ruddell tenía tres meses de nacida vino a Puerto Rico con su madre. Durante esa estadía la madre de la demandante y esta visitaron al Sr. Fucile. Durante la vista se mostraron fotos en las que el Sr. Fucile tenía a la demandante (entonces bebé) cogida en sus brazos, una foto de la demandante en los brazos de su madre frente al restaurante que tenía el Sr. Fucile en aquella época y otra foto del Sr. Fucile, la madre de la demandante y la demandante (de bebe).
8. En 1982 la Sra. Ruddell, en aquel entonces de 6 años, vino a Puerto Rico con su madre de vacaciones. Durante el periodo que estuvieron en Puerto Rico se encontraron con el Sr. Fucile. Durante esa visita fueron a la playa.
9. En el verano de 2021 la Sra. Ruddell vino de vacaciones a Puerto Rico con su esposo y sus dos hijos. Durante esa visita se encontró con el Sr. Fucile. Se mostró una foto del Sr. Fucile junto a la Sra. Ruddell y sus dos hijos frente al parque que lleva el nombre del Sr. Fucile.
10. El Sr. Fucile iba al parque que llevaba su nombre con regularidad para darle mantenimiento e incluso ponía un árbol de Navidad. El Sr. Fucile también iba con otras personas a dar mantenimiento al parque.
11. El Sr. Fucile no le informó a la Sra. Hernández que se encontraría con la Sra. Ruddell en el 2021.
12. La Sra. Hernández conoció al Sr. Fucile en el 2000 y fueron pareja consensual hasta la muerte del Sr. Fucile, en el 2024.

---

[46] Entrada #115 SUMAC TPI, notificada el 1 de octubre de 2025.

13. La Sra. Hernández trabaja en JF Casino Hotel Products donde es representante de accesorios y equipos de casino.

14. Trabajaron juntos en el JF Casino Hotel Products, un negocio de suplido de artículos de casino. Este era el único negocio que tenía el Sr. Fucile al morir.

15. La Sra. Hernández y el Sr. Fucile residían en Condado.

16. El Sr. Fucile tenía muchas condiciones de salud: infección de orina, de corazón, una condición muscular, cangrena, problemas de audición y finalmente tuvo un fallo renal.

17. Las condiciones del Sr. Fucile requirieron hospitalización, para las cuales estuvo presente la Sra. Hernández. Nunca hubo comunicación de la Sra. Ruddell durante esas hospitalizaciones.

18. Durante la última hospitalización, el Sr. Fucile decidió regresar a su casa, mediante hospicio.

19. Al momento de la muerte del Sr. Fucile, la Sra. Hernández estuvo presente.

20. Cercana al momento de su muerte, a preguntas que le hiciesen sobre si había familiar que él quisiera comunicar, el Sr. Fucile indicó en la negativa, que todos sus hermanos murieron y que él no tenía hijos.

21. El Sr. Fucile no mencionó a la Sra. Ruddell en su lecho de su muerte.

22. El Sr. Fucile y la Sra. Ruddell no tenían relación alguna, ni personalmente, ni por medios alternos en periodos especiales como días de cumpleaños y festividades.

23. Tampoco había comunicación entre ellos momentos de necesidad como para enfermedades o para el paso del huracán María en 2017. La Sra. Ruddell no se comunicó con el Sr. Fucile luego del paso del Huracán María ni para el periodo de la pandemia.

24. El Sr. Fucile nunca le envió regalos a los hijos de la Sra. Ruddell.

25. La Sra. Hernández conocía y se relacionaba con la familia de John Fucile, incluyendo sus hermanos y sobrinos. Los hermanos del Sr. Fucile murieron antes que el Sr. Fucile.

26. La Sra. Hernández nunca conoció hijos o hijas del Sr. Fucile. Este nunca le informó que tuviese alguno o alguna.

27. La Sra. Hernández nunca conoció ni escuchó mencionar a la Sra. Ruddell. La primera vez que escucha de esta es en el 2024 cuando sus abogados se comunican para informarle que esta aducía ser hija del Sr. Fucile. Vio por primera vez a la Sra. Ruddell mediante unas fotos que le enseñó la abogada y durante la vista en sus méritos.

28. Durante los más de 24 años que compartió de vida con el Sr. Fucile, la Sra. Hernández nunca compartió con persona que se identificara como su hija. Tampoco vio fotos o documentos que la mencionaran.

29. La Sra. Hernández le realizaba todas las gestiones de viaje al Sr. Fuicile y lo acompañaba durante sus viajes por la edad de este y sus condiciones médicas.

30. La Sra. Hernández tenía acceso a la correspondencia y correos electrónicos del Sr. Fucile. Nunca vio correspondencia de la Sra. Ruddell.

31. La madre de la demandante no realizó gestión para que el Sr. Fucile reconociera a la demandante como su hija.

32. El Sr. Fucile no informó a ningún miembro de su familia sobre la existencia de una hija.

33. En el entierro del Sr. Fucile había aproximadamente 11 personas.

34. En algún momento la Sra. Ruddell conoció a dos sobrinos del Sr. Fucile.

35. El Sr. Fucile suscribió un primer testamento mediante escritura número 6 el 12 de julio de 2022 ante notario público Raúl González Reyes mediante el cual dejó sus bienes a su hermana Susan Humeston, y de esta morir, pasaría a los dos sobrinos del Sr. Fucille, Michael y Donald.

36. El Sr. Fucille suscribió un segundo testamento mediante escritura número 18 el 2 de diciembre de 2022 ante notario público Raúl González Reyes mediante el cual revocó el testamento suscrito el 12 de julio de 2022. En este testamento el Sr. Fucile estableció como heredera única a la Sra. Hernández.

37. Tanto en el testamento suscrito mediante escritura número 6 el 12 de julio de 2022 como el suscrito mediante escritura número 18 el 2 de diciembre de 2022 ante notario público, el Sr. Fucile establece que es soltero y nunca tuvo hijos.

Así pues, examinada la prueba y la alegación de la peticionaria, el tribunal de instancia concluyó **No Ha Lugar** a la acción de filiación instada. Arguyó que, el hecho de que hubiese *fotografías o encuentros ocasionales no constituía prueba de filiación biológica, ni podía equipararse a reconocimiento paterno.* Agregó que, la apelante *no tiene conocimiento personal del tipo de relación que pudo haber existido entre su madre y el señor Fucile.* Además, *las fotografías presentadas solo evidencian que en algún momento se conocieron y se relacionaron, pero la paternidad no puede quedar demostrada por unas cuantas fotos de 1976, 1982 y 2021 ni por un encuentro aislado en esas fechas.* Surge del testimonio de la apelante que aun cuando *alegó haber mantenido comunicación con el señor Fucile, incluso mediante correo electrónico, no presentó ni un solo*

*correo que corroborara dicha alegación. Tampoco existe evidencia de contacto entre ella y el señor Fucile durante casi cuatro décadas —de 1982 a 2021— ni entre su madre y el presunto padre durante ese mismo periodo.*

Aseveró que, resultaba poco creíble que la señora Rudell Hilliard pensara que quien nunca la presentó ante su familia tuviera la intención de legalizarla como hija. **Añadió que, la motivación principal del caso descansaba más en aspiraciones personales, que en prueba fehaciente de filiación**. Por último, concluyó que la prueba presentada carecía de validez necesaria para acreditar la filiación, no lograba desvirtuar las manifestaciones del causante de que no tuvo hijos y tampoco establecía vínculo biológico alguno.

En desacuerdo, el 16 de octubre de 2025, la apelante presentó una *Solicitud de Reconsideración, Enmiendas a Determinaciones de Hecho y Nuevo Juicio*[47]. Reiteró que la prueba presentada conducía a que la señora Rudell Hilliard era hija del señor Fucile Marucci, por lo que procedía que se declarara Con Lugar la moción de reconsideración y/o en solicitud de nuevo juicio.

Ese mismo día, el tribunal de instancia emitió una *Resolución Final* en la cual declaró *No Ha Lugar*[48] la moción de reconsideración, enmiendas a determinaciones de hechos, y nuevo juicio presentada por la apelante.

Inconforme, el 29 de octubre de 2025, la señora Ruddell Hilliard instó el recurso ante nuestra consideración y le imputó al TPI los siguientes señalamientos de error:

> **Primer error:** Erró crasamente y abusó de su discreción el Tribunal de Primera Instancia al sostener que la Apelante "tuvo hasta el año 2024 para incoar su reclamación y no lo hizo dentro del término legal", en contravención directa con el Artículo 561 del Código Civil de 2020, 31 LPRA § 7111, que expresamente concede un término de dos años a partir del fallecimiento del presunto padre para presentar la acción de filiación, cuando el Sr. John Samuel Fucile Marucci

---

[47] Entrada # 120 SUMAC TPI.
[48] Entrada # 121 SUMAC TPI.

falleció el 1 de junio de 2024 y la demanda fue presentada el 19 de septiembre de 2024, dentro del término legal.

**Segundo error:** Erró el Tribunal de Primera Instancia al denegar la moción de sentencia sumaria presentada por la parte apelante, a pesar de que de los hechos incontrovertidos establecidos en dicho trámite, incluyendo las cartas manuscritas suscritas por el señor John Samuel Fucile Marucci, surgen admisiones inequívocas de reconocimiento filial hacia la apelante Alexandra Ruddell Hilliard que evidencian que el señor Fucile fue su padre biológico; dichas cartas fueron debidamente autenticadas conforme a la Regla 901 y gozan de presunciones de autenticidad bajo la Regla 304(22), (23) y (32), además de ser admisibles bajo las excepciones a la prueba de referencia por lo que el foro primario erró en derecho al no adjudicar sumariamente el elemento de filiación a favor de la apelante.

**Tercer Error:** Erró y abusó de su discreción el Tribunal de Primera Instancia al excluir indebidamente del récord las Identificaciones 1 a 7, cartas manuscritas suscritas por el señor John Samuel Fucile Marucci, en violación de las Reglas 104, 105 y 106 de Evidencia de Puerto Rico, así como de las Reglas de autenticación y admisibilidad aplicables (Regla 901 y presunciones de la Regla 304(22), (23) y (32); además de ser admisibles bajo las excepciones a la prueba de referencia, toda vez que la parte apelante invocó oportunamente su fundamento y realizó oferta de prueba conforme a la Regla 104(B), y la exclusión constituyó un factor decisivo y sustancial en el resultado, ameritando la revocación del dictamen apelado.

**Cuarto error:** Erró y abusó de su discreción el Tribunal de Primera Instancia al fundar sus determinaciones de hecho en el testimonio de la demandada Mildred Hernández, pese a que su versión resultaba increíble, contradictoria y materialmente imposible de corroborar. El foro primario acreditó como "hechos determinados y creídos" aseveraciones ajenas a toda base fáctica, como que el señor Fucile "nunca tuvo hijos" ni "mantuvo relación alguna con la demandante", formuladas por una testigo que admitió desconocer la vida del causante antes del año 2000 y que poseía un interés económico directo como heredera única. Al otorgar peso decisivo a un relato especulativo y desestimar sin fundamento racional la prueba documental y auténtica que demostraba la relación filial reclamada, el Tribunal incurrió en un error manifiesto en la apreciación de la prueba.

**Quinto error:** Erró y abusó de su discreción el Tribunal de Primera Instancia al desestimar la demanda, a pesar de que con la prueba admitida en juicio se evidencia por preponderancia de prueba la filiación de la apelante con John Fucile.

**Sexto error:** Erró y abusó de su discreción el Tribunal de Primera Instancia al denegar la solicitud de la apelante para que se ordenara la realización de una prueba de ADN al señor John Samuel Fucile Marucci, a costo de la propia peticionaria, bajo el fundamento equivocado de que "las funciones del Instituto de Ciencias Forenses no comprenden la solicitada por la parte".

**Séptimo error:** Erró y abusó de su discreción el Tribunal de Primera Instancia al denegar la celebración de un nuevo juicio solicitado al amparo de la Regla 48.1(a) y (c) de Procedimiento Civil, a pesar de que la apelante demostró la

existencia de prueba esencial no disponible al momento del juicio original: la disponibilidad de realizar un análisis genético por Laboratory Corporation of America Holdings (LabCorp).

El 4 de noviembre de 2025[49], emitimos una *Resolución* en la cual concedimos a la apelante hasta el 28 de noviembre de 2025 para presentar su alegato suplementario. Además, concedimos a la apelada hasta el 29 de diciembre de 2025, para presentar su alegato en oposición.

Posteriormente, el 1 de diciembre de 2025, dictamos una nueva *Resolución*[50], a los fines de atender la prórroga solicitada por la apelante. Así, le concedimos hasta el 19 de diciembre de 2025, para la correspondiente presentación de su alegato suplementario. En consecuencia, le concedimos a la apelada hasta el 19 de enero de 2026, para presentar su alegato en oposición.

En cumplimiento con lo anterior, el 19 de diciembre de 2025, la apelante sometió su *Alegato Suplementario*. De igual forma, el 19 de enero de 2026, recibimos por parte de la apelada su *Oposición al Recurso de Apelación*.

De este modo, el 20 de enero de 2026[51], dictamos una *Resolución* en la cual dimos por perfeccionado el recurso de epígrafe.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**-A-**

La jurisdicción es el poder o la autoridad de un tribunal para considerar y decidir casos y controversias[52]. A saber, ante la falta de jurisdicción, un tribunal carece de facultad para adjudicar la controversia[53]. Dado que un foro judicial no puede asumir

---

[49] Entrada # 4 SUMAC TA, notificada al día siguiente.
[50] Entrada # 6 SUMAC TA, notificado el 3 de diciembre de 2025.
[51] Notificado el 22 de enero de 2026.
[52] *Muñoz Barrientos v. ELA et al.*, 212 DPR 714, 726 (2023).
[53] *Allied Mgmt. Group v. Oriental Bank*, 204 DPR 374, 386 (2020).

discrecionalmente jurisdicción donde no la hay, el primer factor que debe considerar al evaluar una situación jurídica es el aspecto jurisdiccional[54]. Ello, debido a que los foros judiciales estamos llamados a ser celosos guardianes de nuestra jurisdicción, por lo que los asuntos jurisdiccionales son privilegiados y se atienden con prioridad[55]. Cuando un tribunal carece de jurisdicción para intervenir en un asunto, procede que inmediatamente desestime el recurso apelativo, sin entrar en los méritos de la controversia[56].

Por otro lado, es menester enfatizar que un recurso presentado prematura o tardíamente priva insubsanablemente de jurisdicción y autoridad al tribunal ante el cual se recurre para atender el asunto, caso o controversia[57].

Referente a la controversia que nos ocupa, la Regla 52.1 de Procedimiento Civil[58], dispone que "[t]odo procedimiento de apelación, *certiorari*, certificación y cualquier otro procedimiento para revisar sentencias y resoluciones se tramitará de acuerdo con la Ley aplicable, estas reglas y las reglas que adopte el Tribunal Supremo de Puerto Rico". Dichas normas que rigen el perfeccionamiento de los recursos apelativos deben observarse rigurosamente[59].

Cónsono con lo anterior, la Regla 32 (C) del Reglamento del Tribunal de Apelaciones[60], establece el término para presentar un recurso de *certiorari* cuando se trata de revisar cualquier otra resolución u orden:

> El recurso de certiorari para revisar cualquier otra resolución, orden o dictamen revisable por esta vía de conformidad con la ley, incluida una orden de protección, así como revisar una sentencia final producto de una solicitud de revisión de un laudo de arbitraje del Tribunal de Primera Instancia se formalizará mediante la presentación de una

---

[54] *Torres Alvarado v. Madera Atiles*, 202 DPR 495, 500 (2019).
[55] *Íd.*
[56] *Torres Alvarado v. Madera Atiles, supra*, pág. 501.
[57] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008).
[58] 32 LPRA Ap. III, R. 52.1.
[59] *Soto Pino v. Uno Radio Group*, 189 DPR 84, 90 (2013).
[60] Regla 32(C) del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, Regla del Reglamento *del Tribunal de Apelaciones*, según enmendada, In Re Aprob. Enmda. Reglamento TA, 2025 TSPR 141, pág. 49, 216 DPR ____.

solicitud **dentro de los treinta días** siguientes a la fecha del archivo en autos de una copia de la notificación de la resolución u orden recurrida, a menos que alguna ley especial aplicable disponga un término distinto. **Este término es de cumplimiento estricto**[61]. (Énfasis nuestro).

La jurisprudencia ha sido clara y abundante en cuanto a qué constituye cumplimiento estricto. Sobre este particular, nuestro Tribunal Supremo ha señalado que éstos, contrario a los jurisdiccionales, se pueden observar tardíamente si existe y se demuestra adecuada y oportunamente justa causa para la dilación.

-**B**-

La Regla 47 de Procedimiento Civil, regula lo concerniente a la presentación de la moción de reconsideración y sus efectos procesales. En ella se dispone que la parte adversamente afectada por una orden o resolución del Tribunal de Primera Instancia podrá presentar tal petición, dentro del término jurisdiccional de quince (15) días, desde la fecha de archivo en autos de copia de la notificación de la orden o resolución[62]. En términos generales, una moción de reconsideración permite que la parte afectada por un dictamen judicial pueda solicitar al tribunal que considere nuevamente su decisión, antes de recurrir al Tribunal de Apelaciones[63].

Nuestro foro de mayor jerarquía ha establecido que, **una vez presentada la moción de reconsideración de manera oportuna, quedarán interrumpidos los términos para recurrir en alzada para todas las partes. Estos términos comenzarán a correr nuevamente desde la fecha en que se archiva en autos copia de la notificación de la resolución resolviendo la moción**[64]. (Énfasis nuestro).

---

[61] *Íd.*
[62] 32 LPRA Ap. V, R. 47.
[63] *Morales y otros v. The Sheraton Corp.,* 191 DPR 1, 7 (2014).
[64] *Colón Burgos v. Marrero Rodríguez,* 201 DPR 330 (2018); *Mun. Rincón v. Velázquez Muñíz,* 192 DPR 989, 1000 (2015).

Así pues, una vez resuelta la moción correspondiente, tanto la citada Regla 52.2(b) de las de Procedimiento Civil, *supra*, como la Regla 32(B) del Tribunal de Apelaciones[65], exigen a la parte peticionaria que, para revisar las resoluciones en los casos civiles, **deben presentarse los recursos de *certiorari* dentro del término jurisdiccional de treinta (30) días, a partir del archivo en autos de copia de la notificación de la resolución dictada por el foro recurrido.**

-C-

Es norma reiterada que, los tribunales apelativos no debemos intervenir con la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos de los tribunales de primera instancia[66]. Esta deferencia hacia el foro primario responde al hecho de que el juez sentenciador es el que tiene la oportunidad de recibir y apreciar toda la prueba oral presentada, de escuchar la declaración de los testigos y evaluar su *demeanor* y confiabilidad[67]. Ahora bien, la doctrina de deferencia judicial no es de carácter absoluto, pues debe ceder ante las posibles injusticias que puedan acarrear unas determinaciones de hechos que no estén sustentadas por la prueba desfilada ante el foro primario. Se exceptúan de la regla de deferencia, las determinaciones de hechos que se apoyan exclusivamente en prueba documental o pericial, ya que los tribunales apelativos están en idéntica posición que el tribunal inferior al examinar ese tipo de prueba[68]. La apreciación de la prueba realizada por el TPI debe ser objeto de deferencia por los tribunales apelativos[69]. Como Regla general, no se intervendrá con

---

[65] 4 LPRA Ap. XXII-B, R. 32(B).

[66] *E.L.A. v. S.L.G. Negrón-Rodríguez*, 184 DPR 464, 486 (2012); *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007).

[67] *Suárez Cáceres v. Com. Estatal Elecciones*, 176 DPR 31, 67 (2009); *López v. Dr. Cañizares*, 163 DPR 119, 135 (2004).

[68] *González Hernández v. González Hernández*, 181 DPR 746, 776-777 (2011).

[69] *Rivera Figueroa v. The Fuller Brush Co.*, 180 DPR 894 (2011); *McConnell v. Palau*, 161 DPR 734 (2004).

la apreciación de la prueba, las determinaciones de hechos y las adjudicaciones de credibilidad que haga el foro de instancia[70].

En consideración a lo anterior, los tribunales apelativos deben brindarle gran deferencia al juzgador de los hechos, pues éste se encuentra en mejor posición para evaluar la credibilidad de un testigo y los conflictos de prueba deben ser resueltos por el foro primario[71].

No obstante, aunque el arbitrio del juzgador de los hechos es respetable y merece deferencia, no es absoluto y una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de este Tribunal. *Méndez de Rodríguez v. Morales Medina*, 142 DPR 26 (1996). Si un análisis integral de la prueba refleja que las conclusiones del tribunal *a quo* están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida, éste ha cometido un error manifiesto[72]. Por lo tanto, en vista de dicha función revisora este Tribunal -por vía de excepción- puede intervenir con la apreciación de la prueba que ha hecho el foro de instancia cuando existe error manifiesto, prejuicio, parcialidad o pasión por parte del juzgador de los hechos[73].

De otro lado, es principio establecido que un tribunal apelativo está en la misma posición que el TPI en cuanto a la apreciación de prueba documental o pericial[74]. Por tanto, corresponde a la parte que impugna el peso de probar que el dictamen fue arbitrario, irrazonable o que se tomó en ausencia de

---

[70] *Suárez Cáceres v. Com. Estatal Elecciones,* 176 DPR 31 (2009); *Trinidad García v. Chade,* 153 DPR 280 (2001).
[71] *S.L.G. Rivera Carrasquillo v. A.A.A.*, 177 DPR 345 (2009); *Ramírez Ferrer v. Conagra Foods P.R.,* 175 DPR 799 (2009).
[72] *Íd.* Véase también, *S.L.G. Rivera Carrasquillo v. A.A.A.*, *supra*; *Ramírez Ferrer v. Conagra Foods P.R., supra.*
[73] *Rolón García v. Charlie Car Rental, Inc.*, 148 DPR 420 (1999); *López Vicil v. I.T.T. Intermedia, Inc.,* 142 DPR 857 (1997); *Pueblo v. Collado Justiniano,* 140 DPR 107 (1996).
[74] *Castrillo v. Maldonado,* 95 DPR 885 (1968).

evidencia sustancial, todo lo cual implicaría error manifiesto[75]. Es por ello por lo que en casos donde existe conflicto entre las pruebas, corresponde precisamente al tribunal de instancia dirimirlo[76].

En consecuencia, la intervención de un foro apelativo con la evaluación de la prueba testifical únicamente procede en casos en que un análisis integral de dicha prueba pueda causar en el ánimo del foro apelativo una insatisfacción o intranquilidad de conciencia tal que estremezca el sentido básico de justicia[77]. Los foros apelativos pueden dejar sin efecto las determinaciones de hechos realizadas por el foro de instancia, siempre que "del examen de la totalidad de la evidencia el Tribunal de revisión queda definitiva y firmemente convencido que un error ha sido cometido, como es el caso en que las conclusiones de hecho están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida"[78].

**-D-**

Nuestro Tribunal Supremo ha definido la filiación como aquella "[r]elación jurídica que procede del vínculo natural entre padres e hijos"[79]. Asimismo, ha sido descrita como "'el estado civil de la persona, determinado por la situación que, dentro de una familia, le asigna el haber sido engendrada en ella o el estar en ella en virtud de la adopción o de otro hecho legalmente suficiente al efecto.'"[80]

Nuestro estado de derecho reconoce diversos tipos de filiación, estos son: por vínculo genético, por métodos de procreación asistida

---

[75] *Gallardo v. Petiton,* 132 DPR 39 (1992); *Henríquez v. C.E.S.,* 120 DPR 194 (1987)*; Rivera Pérez v. Cruz Corchado,* 119 DPR 8 (1987); *Quintana Tirado v. Longoria,* 112 DPR 276 (1982).
[76] *López Vicil v. ITT Intermedia, Inc., supra.*
[77] *Pueblo v. Cabán Torre*s, 117 DPR 645 (1986).
[78] *Maryland Casualty Co. v. Quick Const. Corp.,* 90 DPR 329, 336 (1964).
[79] *RPR & BJJ Ex Parte*, 207 DPR 389, 409 (2021) citando a *Rivera Marrero v. Santiago Martínez,* 203 DPR 462, 475 (2019).
[80] *Beníquez et al. v. Vargas et al.*, 184 DPR 210, 226 (2012) citando a *Castro Torres v. Negrón Soto,* 159 DPR 568, 579 (2003).

o por adopción[81]. Con respecto al vínculo genético, el Tribunal Supremo aclaró que:

> [a]unque el elemento biológico es un principio básico en materia filiatoria, no es suficiente para establecer como realidad jurídica que una persona desciende de la otra. En múltiples ocasiones hemos expresado que el vínculo biológico por sí solo no basta para que nazca el vínculo jurídico filiatorio.
> [...][82].
> Así pues, "la relación biológica no es una condición necesaria ni suficiente de la relación filial"[83].

De otro lado, el Art. 559 del Código Civil establece que, "un progenitor puede reconocer de cualquier modo al hijo. Si el progenitor ha muerto[,] el derecho y la obligación de hacer tal reconocimiento se transmiten a sus herederos[.]"[84]

Así pues, toda persona puede solicitar que se le declare judicialmente su estado de hijo de cualquiera de sus progenitores durante la vida de estos[85]. No obstante, una vez fallezca el progenitor, se tendrá un plazo de dos (2) años, a partir de la muerte de este para instar la acción contra sus herederos[86]. Se exceptuará del cumplimiento del antes mencionado término:

> (a) si el progenitor muere durante la minoridad o la incapacidad absoluta del hijo, este puede presentar la acción dentro del plazo de los cuatro (4) años siguientes a la fecha en la que alcance la mayoría de edad o en la que termine su estado de tutela; o

> (b) si después de la muerte del progenitor aparece algún documento u otras pruebas materiales en las que se reconozca expresamente al hijo, este puede presentar la acción dentro del año siguiente del hallazgo o del conocimiento de dichas pruebas.

Transcurridos los antes referidos plazos, la acción filiatoria caduca[87]. No empece lo anterior, los herederos de un progenitor

---

[81] Art. 556 del Código Civil, 31 LPRA sec. 7102.

[82] *RPR & BJJ Ex Parte, supra,* a la pág. 410, citando a *Sánchez Rivera v. Malavé Rivera,* 192 DPR 854, 863 (2015); *Vázquez Vélez v. Caro Moreno,* 182 DPR 803, 809 (2011); *Castro v. Negrón,* 159 DPR 568, 580 (2003); *Calo Morales v. Cartagena Calo,* 129 DPR 102, 112 (1991).

[83] *RPR & BJJ Ex Parte, supra,* a la pág. 410, citando a *González Rosado v. Echevarría Muñiz,* 169 DPR 554, 562 (2006); *Mayol v. Torres,* 164 DPR 517, 531 (2005).

[84] 31 LPRA 7105.

[85] 31 LPRA 7111.

[86] *Íd.*

[87] 31 LPRA 7112.

podrán reconocer al hijo aun después de haber caducado la acción filiatoria[88].

**-F-**

La Regla 48 de las *Reglas de Procedimiento Civil de Puerto Rico* regula aquellas instancias en que se podrá celebrar un nuevo juicio[89]. En particular, la Regla 48.1 dispone que procederá la celebración de un nuevo juicio por cualquiera de los siguientes motivos:

(a) Cuando se descubra evidencia esencial la cual, a pesar de una diligencia razonable, no pudo descubrirse ni presentarse en el juicio.

(b) Cuando no sea posible preparar una exposición en forma narrativa de la evidencia u obtener una transcripción de los procedimientos.

(c) Cuando la justicia sustancial lo requiere. El tribunal podrá conceder un nuevo juicio a todas o cualesquiera de las partes y sobre todas o parte de las cuestiones litigiosas.

Sobre lo anterior, nuestro Tribunal Supremo ha resuelto que todo aquel que solicite un nuevo juicio, deberá establecer que: (1) descubrió prueba nueva, luego de concluido el juicio; (2) no es acumulativa o repetitiva; (3) es esencial para la resolución del pleito; y (4) de esta ser admitida cambiaría el resultado del litigio[90].

Conforme establecido en la Regla 48.2, las partes tendrán un término de quince (15) días a partir del archivo en autos de la notificación de la sentencia para presentar la moción de nuevo juicio, excepto:

(a) Cuando esté basada en el descubrimiento de nueva evidencia, podrá ser presentada antes de la expiración del término para apelar o recurrir de la sentencia, previa notificación a la otra parte, la celebración de vista y la demostración de haberse ejercitado la debida diligencia.

(b) Cuando esté basada en la Regla 48.1(b), podrá presentarse dentro de un término de treinta (30) días después de conocida la imposibilidad de prepararla.

La constatación de este último hecho deberá ocurrir dentro de los treinta (30) días de notificada la sentencia.

---

[88] 31 LPRA 7105.
[89] 32 LPRA Ap. V, R. 48.
[90] *First Bank of P.R. v. Inmob. Nac., Inc.*, 144 DPR 901, 911 (1998), citando a *Riley v. Rodríguez de Pacheco,* 119 DPR 762, 807 (1987).

### III.

Nos corresponde determinar si el tribunal de instancia erró al declarar No Ha Lugar la petición de filiación. Veamos, la señora Ruddell Hilliard señala que el tribunal de instancia incidió al: **(1)** sostener que la apelante no incoó la acción de filiación dentro del término legal; **(2)** denegar la moción de sentencia sumaria presentada por la apelante; **(3)** excluir del récord las Identificaciones 1 al 7, cartas manuscritas suscritas por el señor Fucile Marucci; **(4)** fundar su determinación en el testimonio de la señora Hernández; **(5)** desestimar la demanda a pesar de que con la prueba admitida se evidencia por preponderancia de prueba la filiación de la apelante con el señor Fucile Marucci; **(6)** denegar la solicitud de realizar la prueba de ADN en el Instituto de Ciencias Forenses; **(7)** denegar la solicitud de nuevo juicio.

Referente al primer error, el cual está relacionado con el término legal para instar la acción de filiación; si bien es cierto que la *Sentencia* del TPI menciona que la apelante *tuvo hasta el año 2024 para incoar su reclamación y no lo hizo dentro del término legal,* no es menos cierto que, aun cuando el tribunal de instancia realizó dicha expresión en la *Sentencia,* este atendió la causa de acción con celeridad, cumplió con la clara política judicial a favor de que los casos se ventilen en sus méritos y las partes tuvieron su día en corte[91]. En consecuencia, colegimos que el primer error es improcedente e ineficaz, porque aun cuando el tribunal de instancia mencionó el término de dos años, este no fue aplicado y la controversia jurídica presentada por la apelante fue atendida en los méritos por el TPI. De acuerdo con lo antes esbozado, el primer error no se cometió.

---

[91] *Costas Elena y otros v. Magic Sport y otros,* 213 DPR 523, 534 (2024).

Los errores **segundo y sexto** están relacionados a las determinaciones previas que realizó el TPI durante el transcurso del pleito. Veamos. El **30 de junio de 2025**, la apelante presentó una *Moción en* [...] *Solicitud de Intervención del Instituto de Ciencias Forenses de Puerto Rico*[92]. El 9 de julio de 2025[93], el tribunal de instancia denegó su petición debido a que lo solicitado no está comprendido dentro de las funciones del ICF.

De igual manera, **el 18 de julio de 2025**, la apelante presentó una *Solicitud de Sentencia Sumaria*[94] que fue declarada *No Ha Lugar* por el TPI el **6 de agosto de 2025**, por entender que, antes de tomar la decisión sobre la filiación solicitada, procedía realizar un escrutinio judicial adecuado, para evaluar credibilidad y admisibilidad de la prueba.

Tras revisar minuciosamente el expediente, surge que la apelante **nunca presentó moción de reconsideración ni recursos de *certiorari* sobre las determinaciones del TPI que anteceden dentro del término establecido por el ordenamiento jurídico**. Es decir, la apelante instó el recurso que nos ocupa el 29 de octubre de 2025 y pretende que esta Curia revise decisiones a ochenta y cuatro (84) días después de haberse declarado *No Ha Lugar* la *Solicitud de Sentencia Sumaria* y noventa y tres (93) días de haberse declarado *No Ha Lugar* la *Solicitud de Intervención del Instituto de Ciencias Forenses de Puerto Rico*[95]. En vista de ello, concluimos que los errores segundo y sexto no son revisables por ser tardíos, lo cual nos priva de jurisdicción.

Por estar íntimamente relacionados entre sí, discutiremos en conjunto los errores **tercero, cuarto y quinto**. En síntesis, la apelante aduce que incidió el TPI al: excluir del récord las

---

[92] Apéndice 66 del recurso de *Apelación*.
[93] Notificado al día siguiente. Apéndice 69 del recurso de *Apelación*.
[94] Apéndice 79 del recurso de *Apelación*.
[95] *Íd.*

Identificaciones 1 al 7, cartas manuscritas suscritas por el señor Fucile Marucci; fundar su determinación en el testimonio de la señora Hernández y desestimar la demanda a pesar de que con la prueba admitida se evidenciaba por preponderancia de prueba la filiación de la apelante con el señor Fucile Marucci.

Como norma general, las determinaciones del tribunal de instancia están acompañadas de una presunción de corrección. Corresponde al apelante colocarnos en posición de apartarnos de la deferencia que otorgamos a los dictámenes del TPI, que es quien ve y escucha a los testigos[96]. Por eso, el apelante no puede descansar meramente en sus alegaciones. Al contrario, este tiene el peso de rebatir la presunción de corrección que gozan las actuaciones de los tribunales de primera instancia. Para realizar nuestra función revisora, el Tribunal Supremo ha establecido que la intervención de este foro intermedio con la prueba oral tiene que estar basada en un análisis independiente de la prueba desfilada y no a base de los hechos que exponen las partes. Es por lo que, de ordinario, cuando se señalan errores en la apreciación de la prueba y su admisibilidad, el derecho de apelación implica que el recurso sea perfeccionado mediante alguno de los mecanismos de recopilación de la prueba oral presentada ante el Tribunal de Primera Instancia.

Escuchada la regrabación de la vista celebrada el 16 de septiembre de 2025 y al amparo de los criterios que guían nuestra discreción, no intervendremos en la determinación recurrida, pues la apelante no demostró que el foro *a quo* se excedió en el ejercicio de su discreción o se equivocó en la interpretación del derecho. Por consiguiente, este foro intermedio no intervendrá con la apreciación de la prueba establecida por el foro apelado, por no existir error

---

[96] *Sepúlveda v. Departamento de Salud,* 145 DPR 560 (1998).

manifiesto, pasión, prejuicio o parcialidad. Colegimos que, los referidos errores, no se cometieron.

**Por último**, el séptimo error está relacionado a la denegatoria de celebrar un nuevo juicio.

Fíjese que, la apelante aduce que "logró localizar un laboratorio acreditado en Estados Unidos, [...] dispuesto a realizar el análisis genético, siempre que la muestra se tome conforme a un protocolo pericial validado y bajo orden judicial"[97]. Aseveró que dicha disponibilidad constituye nueva evidencia esencial, no considerada al momento del dictamen, por lo cual, procedía la celebración de un nuevo juicio.

Comenzaremos por enfatizar que, de primera mano, la intención de la apelante era realizar pruebas de ADN a los sobrinos del señor Fucile Marucci. Sin embargo, desistió de ello y optó por exhumar el cadáver del señor Fucile Marucci, por ser esta una prueba que establecería la filiación de manera más fidedigna. No empece lo anterior, la apelante no realizó ninguna de las pruebas.

Conforme nuestras Reglas de Procedimiento Civil, procederá la celebración de un nuevo juicio, en aquellas instancias que: (a) se descubra evidencia esencial; (b) no sea posible prepararse una exposición narrativa de la evidencia; (c) la justicia sustancial lo requiera.

Según se desprende del expediente, desde que se instó la demanda, hasta que se dictó sentencia, transcurrió un (1) año. No obstante, la apelante alegó que durante ese periodo no encontró ningún lugar dispuesto a realizar las pruebas de ADN necesarias. Dicha aseveración nos parece inverosímil.

Somos del criterio que, desde la presentación de la demanda, la apelante tuvo tiempo suficiente para encontrar un laboratorio que

---

[97] *Apelación*, pág. 68.

realizara las pruebas de ADN para así establecer la filiación de manera certera. Sin embargo, la falta de diligencia por parte de la apelante en la tramitación del pleito implicó la dilación de los procedimientos y redundó en que la apelante no pudo establecer su vínculo filial con el señor Fucile Marucci. Encontrar un nuevo laboratorio, de por sí, no cumple con los criterios que establece la Regla 48 de las de Procedimiento Civil, *supra*, a modo de justificar la celebración de un nuevo juicio. En vista de ello, razonamos que el referido error no se cometió.

De conformidad a todo lo anterior, colegimos que, ninguno de los errores señalados por la parte apelante fue cometido. A tenor con el Derecho aplicable, confirmamos el dictamen emitido por el TPI.

**IV.**

Por los fundamentos antes expuestos, ***confirmamos*** la *Sentencia* apelada.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones